IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 2, 2001

## TIMOTHY POTTS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-00-308     Roger A. Page, Judge**

---

**No. W2001-00400-CCA-R3-PC  - January 23, 2002**

---

The petitioner, Timothy Potts, pled guilty to second degree murder, a Class A felony, and was sentenced as a Range II, multiple offender to thirty-five years in the Tennessee Department of Correction. He appeals the trial court's denial of his petition for post-conviction relief, claiming (1) that his guilty plea was not knowingly, voluntarily, and intelligently made because he did not understand that he was pleading guilty as a Range II offender and (2) that he received the ineffective assistance of counsel. We affirm the trial court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Scott G. Kirk, Jackson, Tennessee, for the appellant, Timothy Potts.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred Lynn Earls and James W. Thompson, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The petitioner's underlying conviction relates to the murder of Howard G. Bates, a cab driver. The record reflects that the petitioner shot the victim in the back of the head at point blank range, killing him instantly. At the post-conviction hearing, the petitioner testified that he was originally charged with first degree murder. He said that he did not have a prior criminal record. He said that he pled guilty to second degree murder and that the trial court sentenced him as a Range II offender to thirty-five years. He acknowledged that his trial attorney told him that a second degree murder conviction carried a thirty-five-year prison sentence. He also acknowledged that the state explained to him at the guilty plea hearing that he was pleading guilty to second degree murder and that he would receive a thirty-five-year sentence. However, when the petitioner's post-conviction attorney asked him if he understood that by pleading guilty he was agreeing to be sentenced as a Range II offender instead of a Range I offender, the petitioner testified, "I ain't pay no attention to

that." The petitioner said that his trial attorney advised him to plead guilty. He said that when he pled guilty, he knew that if he did not accept the state's plea offer he could have been convicted of first degree murder and could have received a life sentence.

The petitioner testified that he did not give a statement to the police when he was arrested. He said that an investigator presented three written statements "out of nowhere" that the petitioner allegedly gave to the police. He acknowledged that the state intended to use the statements against him at trial. He said that the statements were not written in his handwriting and that he told his trial attorney that he did not give the statements to the police. He said that despite what he said, his attorney did not file a motion to suppress the statements. He said that he asked his trial attorney to have a handwriting expert analyze the statements but that his trial attorney never hired a handwriting expert. He said that at his preliminary hearing, the state produced an eyewitness but that the eyewitness could not "pinpoint" the petitioner as the person who shot the victim. He said that based on what he had learned about his case since pleading guilty, he would have gone to trial. He said he should have been sentenced as a Range I offender instead of a Range II offender.

On cross-examination, the petitioner testified that his trial attorney did not explain his guilty plea to him and did not tell him that the trial court was going to sentence him as a Range II offender. He acknowledged signing a written plea agreement that stated, in bold type and uppercase letters, "I fully understand that as part of this negotiated plea . . . the thirty-five (35) year sentence which I am accepting, is outside the range of punishment for a range I offender, which I would be classified as, notwithstanding the negotiation of this plea." However, he said that he never read the written agreement and that his attorney never read it to him. He admitted that he knew how to read when he signed the written plea agreement, but he asserted that his trial attorney "just told me to sign it and I signed." The petitioner acknowledged that when he pled guilty, he knew that he was agreeing to be sentenced as a Range II offender. He also acknowledged that he knew what he was doing when he pled guilty.

The petitioner testified that his preliminary hearing attorney, who was not his trial attorney, tried to have his three written statements suppressed but was unsuccessful. The state then asked the defendant "if the State were to offer you a twenty-five year sentence as a range one on second degree murder would you take it today?" The petitioner answered, "Yes, sir." The state then asked, "So you don't want a jury trial, you want a guilty plea?" Again, the petitioner answered, "Yes, sir."

The defendant's trial attorney testified that at the time of the post-conviction hearing, he had been licensed to practice law for nineteen years. He said that he discovered several problems for the petitioner's defense. First, he said that the petitioner had given three inconsistent statements to the police about the crime. Second, he said that a man by the name of "Washington" had agreed to testify against the petitioner about statements the petitioner made while the petitioner and Mr. Washington were being held in the Madison County Justice Complex. Finally, he said that several eyewitnesses to the crime positively identified the petitioner. The petitioner's trial attorney said that he discussed every aspect of the case with the petitioner, including the likelihood that the petitioner would be convicted at trial and receive a life sentence for first degree murder. He said that at one point, he and the petitioner were prepared to go to trial but that the case was continued. He said that

after a lengthy negotiation, the state agreed to let the petitioner plead guilty to second degree murder and be sentenced as a Range II offender.

The petitioner's trial attorney testified that he read the plea agreement to the petitioner verbatim. He said that the petitioner had about two and one-half days to decide whether he wanted to accept the plea. He said that an artist's drawing of the shooter resembled the petitioner's first cousin and that the petitioner had the option to go to trial and argue that his cousin shot the victim. He said that the petitioner did not want to argue that his cousin murdered the victim and that the petitioner decided to plead guilty. He said that had the petitioner gone to trial, he was prepared to impeach Mr. Washington.

The petitioner's trial attorney testified that he had part of the written plea agreement typed in bold print in order for the petitioner to understand fully that he was pleading outside of his range. He said that it was not standard procedure to put parts of written plea agreements in bold type but that he did so specially for this case. He said that he gave the petitioner a copy of every document he received in the case, including impeachment evidence against Mr. Washington. He said that the petitioner never asked him to do anything about the three statements that the petitioner gave to the police and that the petitioner never indicated that the police coerced the petitioner into giving the statements. He said that the petitioner never denied making the statements and that the petitioner never asked him to have a handwriting expert examine the statements. He said that he could not think of anything that he would have done differently in the case and that he still thought the petitioner did the right thing by accepting the state's plea offer.

The state introduced into evidence a transcript of the petitioner's guilty plea hearing. In that hearing, the following exchange occurred:

> THE COURT: You've gone over [the plea agreement] with your attorney. And at this point, at least, you understand what you're doing this morning?
>
> DEFENDANT: Yes, sir.
>
> . . . .
>
> [THE STATE]: . . . . Second degree murder is a Class A felony and carries a range of punishment from fifteen (15) to sixty (60) years. Pursuant to our agreement, Mr. Potts is pleading outside of his regular range, which would be Range I, into Range II. The actual range for Range II -- Let me look at it to be sure -- is twenty-five (25) to forty (40) years.
>
> Mr. Potts is actually a standard Range I offender and that range would be fifteen (15) to twenty-five (25). But pursuant to our agreement -- Of course, he's faced with a charge of first degree

murder, which carries a possible life sentence which would be fifty-one (51) years or a possible life without parole. And the State has filed to seek life without parole in this case.

So, he's pleading outside his range as a Range II offender and the agreement was thirty-five (35) years, so that falls within Range II. I want to make that clear.

THE COURT: Mr. Potts, you've heard [the state] go over the offense to which you're pleading and the range of punishment for it. Do you have any questions at all about that?

DEFENDANT: No, sir.

THE COURT: Do you understand that you're pleading outside your range, which you are allowed to do under our law; do you understand that?

DEFENDANT: Yes, sir.

THE COURT: Do you have any questions about that part of it?

DEFENDANT: No, sir.

. . . .

THE COURT: Is your plea being entered freely and voluntarily?

DEFENDANT: Yes, sir.

THE COURT: Has any threat been made or promise made toward you or anything to cause you to plead guilty other than your plea bargain agreement?

DEFENDANT: No, sir.

THE COURT: You are pleading guilty because you think that's the best course for you under all the circumstances and because you are guilty; is that correct?

DEFENDANT: Yes, sir.

-4-

THE COURT: Are you satisfied with the representation provided by your attorney . . . ?

DEFENDANT: Yes, sir.

. . . .

The trial court denied the post-conviction petition, finding that the petitioner voluntarily and understandingly entered his plea and that he did not receive the ineffective assistance of counsel. The trial court noted that the state, the trial court, and the petitioner's trial attorney explained to the petitioner that he was pleading outside of his range. In addition, the written plea agreement that the petitioner signed stated that fact in bold type. As for the petitioner's claim that he received the ineffective assistance of counsel, the trial court believed the trial attorney's testimony over that of the petitioner. In addition, it found that trial counsel's representation of the petitioner was "exceptional" and met the standard for the effective assistance of counsel.

In order for a petitioner to succeed on a post-conviction claim, the petitioner must show the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). A trial court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. See Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the trial court. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Questions concerning the credibility of witnesses and the weight and value to be given to their testimony are resolved by the trial court, not this court. Id. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. Tenn. Code Ann. § 40-30-203.

## I. KNOWING, VOLUNTARY, AND INTELLIGENT GUILTY PLEA

The petitioner contends that he did not knowingly, voluntarily, and intelligently enter his guilty plea because he did not understand that he was being sentenced as a Range II offender instead of a Range I offender. The state argues that the petitioner made his plea knowingly, voluntarily, and intelligently. We agree with the state.

In order for a conviction based upon a guilty plea to comport with due process, the plea must be voluntarily, knowingly, and understandingly entered. Boykin v. Alabama, 395 U.S. 238, 242-44, 89 S. Ct. 1709, 1712 (1969). A guilty plea is not voluntary "if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43, 89 S. Ct. at 1712). The standard for assessing the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Id. (quoting North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i. e., that he has been made aware of the significant consequences of such a plea;

otherwise, it will not amount to an 'intentional abandonment of a known right.'" Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). To assess whether a petitioner entered a knowing, voluntary, and intelligent guilty plea, this court must consider the totality of the circumstances. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995).

Initially, we note that a defendant may be sentenced outside of his range pursuant to a guilty plea. See Hicks v. State, 945 S.W.2d 706 (Tenn. 1997). In this case, the petitioner's trial attorney testified that he went over the proposed guilty plea with the petitioner verbatim. In addition, the guilty plea hearing transcript shows that the state explained that the petitioner was being sentenced as a Range II offender. The transcript also shows that the trial court told the petitioner that he was being sentenced outside of his range and the trial court asked the petitioner if he understood or had any questions about it. At no time did the petitioner indicate that he was confused or did not understand that he was being sentenced as a Range II offender. Even more telling is the fact that the petitioner admitted on cross-examination at the post-conviction hearing that he knew he was being sentenced as a Range II offender. Based on the totality of the circumstances, we believe that the trial court properly found that the petitioner entered his guilty plea knowingly, voluntarily, and intelligently.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, the petitioner argues that he received the ineffective assistance of counsel. The state contends that trial counsel's performance was not ineffective. We agree with the state.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). When a petitioner claims that ineffective assistance of counsel resulted in a guilty plea, the petitioner must prove that counsel performed deficiently and that but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time." <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065; <u>see</u> <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982).

As previously noted, the burden is on the petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. <u>Fields v. State</u>, 40 S.W.3d 450, 456 (Tenn. 2001). We review the trial court's conclusions of law under a purely <u>de</u> <u>novo</u> standard. <u>Id.</u> at 457.

## A. Failure to Inform as to Range II Offender

First, the petitioner contends that he received the ineffective assistance of counsel because his trial attorney never told him that he would be sentenced as a Range II offender. However, the petitioner's trial attorney testified that he went over the plea agreement with the petitioner verbatim, and the trial court found that the attorney's testimony was credible. Moreover, the petitioner signed a written plea agreement which stated that the petitioner was accepting a thirty-five-year sentence and that the sentence was outside the range of punishment for a Range I, standard offender. This language appeared in bold type, uppercase letters, and just above the petitioner's signature line. We also note that the transcript of the post-conviction hearing shows that the following exchange occurred between the petitioner and the state:

> [THE STATE]: When [the state] told you [at the guilty plea hearing that] you were pleading to a range two when you were really a range one, you didn't have any questions then, did you?
>
> [PETITIONER]: No, sir.
>
> [THE STATE]: You knew you were pleading to -- outside your range, didn't you?
>
> [PETITIONER]: Yes, sir.
>
> [THE STATE]: You were told?
>
> [PETITIONER]: Not by [my trial attorney].
>
> [THE STATE]: Oh, but you still knew.
>
> [PETITIONER]: I told him my lawyer he told me -- I agreed what my lawyer told me to do.
>
> [THE STATE]: My question to you is at the time you pled guilty you knew [what] you were doing?

[PETITIONER]: Yes, sir.

[THE STATE]: Your only complaint is who the source of the information was; is that right?

[PETITIONER]: Yes, sir.

We believe that the petitioner's testimony at the post-conviction hearing shows that when he pled guilty, he knew that he was being sentenced outside of his range. Therefore, even assuming arguendo that the petitioner's trial attorney did not explain to the petitioner that he was going to be sentenced as a Range II offender, the petitioner has not shown how he was prejudiced by his trial attorney's deficient performance. Thus, he is not entitled to relief.

## B. Failure to File a Motion to Suppress

Next, the petitioner contends that he received the ineffective assistance of counsel because his trial attorney failed to file a motion to suppress three statements that the petitioner gave to the police. However, we believe that the defendant has failed to show that he is entitled to relief on this issue.

This court has stated that if arguable grounds exist to suppress incriminating evidence, then an attorney, as a zealous advocate for the client, should move to suppress that evidence. See Robert C. Bellafant v. State, No. 01C01-9705-CC-00183, Maury County, slip op. at 10 (Tenn. Crim. App. May 15, 1998). The petitioner's trial attorney testified that the petitioner never told him that the petitioner did not make the statements. Furthermore, the petitioner's trial attorney testified that the petitioner never indicated that the police coerced or harassed the petitioner into giving the statements. We note that the petitioner did not claim at the post-conviction hearing that the police obtained the statements in violation of his constitutional rights.

In order to succeed on this issue, the petitioner would have to demonstrate that counsel's failure to file a motion to suppress the statements not only was deficient performance but that he was prejudiced by the deficiency. In order to demonstrate prejudice, the petitioner would have to prove that his statements were inadmissible. The petitioner has offered no such proof, and we find nothing in the record to indicate that the petitioner's statements were inadmissible. Therefore, he is not entitled to relief.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE

-8-